# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMEER KING,

                                    Case No.                    cv

                  Plaintiff,

v.

                                      Judge:

DETROIT DEPARTMENT OF TRANSPORTATION,

                  Defendant.

---

Keith D. Flynn (P74192)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
Miller Cohen, PLC
7700 2nd Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com

                                                          /

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence as alleged in the complaint.

*/s/Ryan A. Paree*

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, Ameer King, by and through his attorneys, Miller Cohen, PLC, and for his Complaint against Defendant, Detroit Department of Transportation, states as follows:

## PARTIES

1.      Plaintiff, Ameer King, was employed by Defendant. He is a resident of Eastpointe, Michigan.

2.      Defendant, Detroit Department of Transportation, is the government agency responsible for the operation of public transportation in the City of Detroit and several surrounding communities.

## JURISDICTION

3.      This Court has original jurisdiction over Plaintiff's claims arising under the Family and Medical Leave Act of 1993, 29 USC 28 pursuant to 28 USC 1331.

4.      Under 28 USC 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5.      This Court is the proper venue pursuant to 28 USC 1391(b).

## GENERAL ALLEGATIONS

6.      Plaintiff was employed with Defendant for his entire adult life, 25 years at the time of his forced resignation.

7.      In 2021, Plaintiff was diagnosed with prostate cancer.

8.      Plaintiff requested FMLA leave to provide for occasional doctor's visits and treatment for his cancer.

9.     Plaintiff's request for FMLA was officially approved by Defendant's Human Resources ("HR").

10.     Plaintiff also formally requested medical accommodations, requesting that he be allowed to take bathroom breaks and walks as needed, as well as intermittent leave as needed.

11.     The accommodation requests were also approved by HR.

12.     Despite the approved FMLA and accommodations, Plaintiff attempted to work as much as possible, typically coming to work after morning cancer treatments.

13.     Plaintiff's immediate supervisors, all of whom were female, would frequently belittle and emasculate Plaintiff about his prostate cancer.

14.     His supervisors would ask him in front of other employees why he had to go to the bathroom so often, or tell him that he was burdening his co-workers with the FMLA leave.

15.     These supervisors knew about his condition and his accommodations, and were only asking these questions to humiliate him.

16.     In June of 2021, Plaintiff's supervisor falsely accused him of using profanity over the radio.

17.     When pressed for more information, the supervisor said that Plaintiff was overhead saying "damn," and that this constituted impermissible "lewd language."

18.    Plaintiff was never disciplined for this alleged "lewd language."

19.    The next day, during an approved doctor's visit, Plaintiff's doctor told Plaintiff that he needed to take an extended leave of absence for his health, recommending several months off.

20.    Plaintiff filed for combination FMLA and sick/accidental leave, which was approved.

21.    By July 2021, Plaintiff's condition had improved and he felt well enough to return to work, and attempted to reach out to Defendant regarding his return.

22.    Over the following four months, despite numerous attempts by Plaintiff to contact Defendant to return to work, nobody ever responded.

23.    Plaintiff went so far as to physically appear at Defendant's headquarters in Detroit, hoping to speak with someone, but the employees there only seemed concerned as to how he got into the building.

24.    After Plaintiff showed them his employee badge, he was told to leave because nobody who could help him was available.

25.    This in-office interaction was literally the only communication from Defendant during this time.

26.    After several months, Plaintiff began to struggle due to the loss of income, and felt he had no other option but to put in his paperwork to retire with his pension.

27.     After 25 years, Plaintiff qualified for full retirement with benefits.

28.     Defendant approved Plaintiff's resignation request almost immediately.

29.     Weeks later, Plaintiff was informed that his retirement was denied due to a medical leave of absence from 2008.

30.     This was the first time that Plaintiff had ever been informed that the leave of absence from 2008 did not count towards his years of service.

31.     As a result, Defendant considered Plaintiff only employed for 24 years, which was insufficient to retire with a pension.

32.     When Plaintiff attempted to follow up on his retirement benefits, Defendant again refused to communicate in any way whatsoever.

33.     Because of this, Plaintiff was forced to resign without any benefits.

34.     The resignation was, of course, approved immediately.

35.     In fall of 2021, Plaintiff attempted to withdraw his resignation.

36.     The Collective Bargaining Agreement between Plaintiff's Union and Defendant allowed employees to return to work within one year of resignation, so long as the resignation was not for cause.

37.     Plaintiff met all of the requirements to have his resignation withdrawn.

38.     Defendant never responded in any way to Plaintiff's reinstatement requests.

39.     When Plaintiff's Union reached out on his behalf, Defendant responded that Plaintiff's medical leave earlier that year was really an excuse to avoid being disciplined for the alleged "lewd language."

40.     Plaintiff had never once been disciplined in his entire career.

41.     The discipline associated with the use of allegedly "lewd" language would not have permitted Plaintiff's termination under the terms of the CBA.

42.     Defendant was legally required to return Plaintiff to work, but refused to do so.

43.     As a result, Plaintiff was constructively terminated.

44.     Plaintiff has since found new, similar employment; however, the new employment pays significantly less than he would be making if he had been allowed to return to work, and has fewer benefits.

45.     Furthermore, since Plaintiff was constructively terminated and not allowed to return, Plaintiff has lost his pension.

## COUNT I

## FAMILY MEDICAL LEAVE ACT – INTERFERENCE

46.     Plaintiff incorporates by reference all preceding paragraphs.

47.     Plaintiff was an eligible employee as defined by the Family Medical Leave Act ("FMLA"), 29 USC 2611(2)(a), who had been employed for more than 12 months and had worked at least 1,250 hours of service during that time.

48.     Defendant is an employer as defined by the FMLA, 29 USC 2611(4)(a), as they employed more than 50 employees at all applicable times.

49.     Plaintiff was entitled to FMLA leave as an eligible employee due to his disability.

50.     Plaintiff's FMLA request for intermittent leave was approved by Defendant's HR.

51.     However, Plaintiff's supervisors attempted to dissuade Plaintiff from taking FMLA leave on multiple occasions, telling him publicly that he was a burden on his co-workers and verbally harassing him.

52.     Furthermore, Plaintiff's extended FMLA leave of absence was also approved by Defendant's HR.

53.     Plaintiff attempted to end his FMLA leave early, but was denied the opportunity to do so.

54.     Even after the originally approved return date, Defendant continued to deny Plaintiff's return to work.

55.    Defendant was obligated to return Plaintiff to his position or an equivalent one, did not, and has no legitimate reason for its failure to do so.

56.    Defendant's failure to return Plaintiff to work was willful and deliberate.

57.    Defendant's failure to allow Plaintiff to return to work by refusing to communicate with him constitutes a constructive discharge and interference with Plaintiff's FMLA rights.

58.    Defendant's refusal to allow Plaintiff to retire with full benefits constitutes interference with Plaintiff's FMLA rights.

59.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.    Granting all available damages for economic injury, loss of employment benefits, loss of job opportunity, loss of earning capacity, liquidated damages, and other damages;

B.     Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.     Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.     Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT II

## FAMILY MEDICAL LEAVE ACT -RETALIATION

60.     Plaintiff incorporates by reference all preceding paragraphs.

61.     The FMLA prohibits an employer from retaliating against an employee for their use of leave time. FMLA, 29 USC 2615(a)(2).

62.      Plaintiff's FMLA request for intermittent leave was approved by Defendant's HR.

63.      However, Plaintiff's supervisors retaliated against Plaintiff for taking FMLA leave on multiple occasions, telling him publicly that he was being a burden on his co-workers and verbally harassing him.

9

64.      Plaintiff's supervisors further retaliated against Plaintiff by concocting a false allegation that Plaintiff used "lewd language" over the dispatch radio.

65.      Defendant's refusal to allow Plaintiff to return to work by refusing to communicate with him constitutes constructive dismissal and retaliation for Plaintiff's exercise of his FMLA rights.

66.      Defendant's refusal to allow Plaintiff to retire with full benefits constitutes retaliation for Plaintiff's exercise of his FMLA rights.

67.      Defendant's retaliatory conduct was willful and deliberate.

68.      As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.  Granting all available damages for economic injury, loss of employment benefits, loss of job opportunity, loss of earning capacity, liquidated damages, and other damages.

B.   Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.   Granting Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.   Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT III

## SEX DISCRIMINATION IN VIOLATION

## OF THE ELLIOT-LARSON CIVIL RIGHTS ACT

69.   Plaintiff incorporates by reference all preceding paragraphs.

70.   The Elliot-Larsen Civil Rights Act, MCL § 37.2101 *et. seq.*, prohibits sex discrimination against protected persons in the workplace, and obligates employers to take certain steps to prevent such harassment and discrimination.

71.   Plaintiff is a man who was employed by Defendant.

72.     Plaintiff was exposed to a discriminatory work environment where his female supervisors belittled and emasculated him because of his sex-specific prostate cancer.

73.     Upon information and belief, male employees with disabilities unrelated to their sex were not verbally harassed by their supervisors.

74.     Upon information and belief, female employees with disabilities were not verbally harassed by their supervisors, regardless of whether those disabilities were sex-specific.

75.     The male sex-specific nature of his cancer was the reason for the harassment from Plaintiff's supervisors.

76.     Defendant's false claims that Plaintiff used "lewd language" over the radio were fabricated to further attack Plaintiff because of his sex-specific disability.

77.     Defendant refused to communicate with Plaintiff regarding his return to work because of his prostate cancer.

78.     Defendant's refusal to communicate with Plaintiff regarding his return to work constitutes constructive discharge.

79.     Defendant further used the false allegation of "lewd language" as an excuse to constructively terminate Plaintiff because of his cancer.

80.     Defendant refused to allow Plaintiff to retire with full benefits because

of his prostate cancer.

81.     Plaintiff has suffered significant financial and emotional harm as a direct result of the above discrimination.

82.     Defendant's refusal to return Plaintiff to work and denial of retirement benefits was without a legitimate non-discriminatory reason.

83.     Furthermore, Defendant denied Plaintiff his ability to retire with full benefits without a legitimate non-discriminatory reason.

84.     Defendant's discriminatory and retaliatory conduct exhibited a deliberate, willful and/or reckless indifference to Plaintiff's protected rights to be free from sex discrimination and harassment.

85.     As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.     Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment,

pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B.      Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.      Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## <u>COUNT IV</u>

## <u>MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT – RETALIATION</u>

86.      Plaintiff incorporates by reference all preceding paragraphs.

87.      As stated above, Plaintiff was employed by Defendant and Defendant is an employer as defined by the Elliott-Larsen Civil Rights Act.

88.      Plaintiff complained about the sex discrimination and harassment while he was employed by Defendant.

89.    Defendant had knowledge of Plaintiff's opposition to the sex discrimination and harassment prior to Plaintiff's constructive termination.

90.    In violation of Elliott-Larsen, MCL § 37.2701, Defendant retaliated against Plaintiff for his protected activity by creating a hostile work environment, constructively discharging him by refusing to allow him to return to work, and denying him his retirement benefits without a legitimate non-discriminatory reason.

91.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from sex discrimination and harassment.

92.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has lost wages and benefits; his future earning capacity has been substantially impaired; he has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.    Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic

damages, loss of employment opportunity, harm to reputation, loss of earning capacity, exemplary and punitive, and other damages.

B.     Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.     Granting Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.     Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT V

## MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT - DISCRIMINATION

93.     Plaintiff incorporates by reference all preceding paragraphs.

94.     Plaintiff was a disabled person as defined by Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1103(d).

95.     Defendant is an employer as defined by MCL 37.1201(b).

96.     Plaintiff's disability, prostate cancer, substantially limited one or more major life activities.

97.     The fact that Plaintiff's FMLA and accommodation requests were approved indicates that Defendant perceived Plaintiff as a person with a disability.

98.     Plaintiff was exposed to a discriminatory work environment where his supervisors belittled and emasculated him because of his disability.

99.     Plaintiff was not permitted to return from his medical leave of absence because of his disability.

100.    Defendant claimed that Plaintiff's medical leave, which was approved by his doctor, approved by HR, and related the cancer for which he had been undergoing treatment for months, was simply an excuse to avoid discipline for the alleged "lewd language."

101.    By refusing to permit Plaintiff to return to work, Defendant constructively terminated Plaintiff's employment.

102.    Plaintiff has suffered significant financial and emotional harm as a direct result of the above discrimination.

103.    Ultimately, Defendant's refusal to return Plaintiff to work was without a legitimate non-discriminatory reason.

104.    Defendant refused to allow Plaintiff to retire with full benefits because of his disability.

105.    Defendant's denial of Plaintiff's retirement benefits was done without a legitimate non-discriminatory reason.

106.    Defendant's discriminatory and retaliatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected rights to be free from disability discrimination and harassment.

107.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.    Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary damages, and other damages;

B.      Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.      Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT VI

## MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT – RETALIATION

108.    Plaintiff incorporates by reference all preceding paragraphs.

109.    As stated above, Plaintiff was a disabled person and Defendant is an employer as defined in the Michigan Persons with Disabilities Civil Rights Act.

110.    Plaintiff requested accommodations for his disability in writing, which were approved by HR.

111.    Plaintiff was verbally berated by his supervisors on more than one occasion because of the accommodations.

112.    Plaintiff's supervisors retaliated against him by falsely accusing him of using "lewd language" over the radio.

113.    The accusation is not sufficient to warrant Plaintiff's termination, even if true.

114.    Defendant's refusal to allow Plaintiff to return to work was willful and deliberate.

115.    Defendant's refusal to allow Plaintiff to return to work constitutes constructive dismissal and retaliation for requesting accommodations and opposing disability discrimination.

116.    Defendant's refusal to allow Plaintiff to retire with full benefits constitutes retaliation for requesting accommodations and opposing disability discrimination.

117.    As a direct and proximate result of Defendant's discriminatory and harassing conduct, Plaintiff has lost wages and benefits; their future earning capacity has been substantially impaired; they have suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and they have suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.      Granting all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, loss of earning capacity, exemplary and punitive damages, and other damages;

B.      Ordering appropriate injunctive relief requiring Defendant to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C.      Granting Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

[SIGNATURES NEXT PAGE]

Respectfully submitted,

**MILLER COHEN PLC**

/s/ *Ryan Paree*
Keith Flynn (P74192)
Ryan A. Paree (P80345)
*Attorneys for Plaintiff*
7700 Second Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
Dated: June 28, 2023                    kflynn@millercohen.com
rparee@millercohen.com

[THIS SPACE INTENTIONALLY LEFT BLANK]

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMEER KING,

Case No.                    cv

Plaintiff,

v.

Judge:

DETROIT DEPARTMENT OF TRANSPORTATION,

Defendant.

---

Keith D. Flynn (P74192)
Ryan A. Paree (P80345)
Attorneys for Plaintiff
Miller Cohen, PLC
7700 2nd Ave., Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com

_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, Ameer King, by and through his attorneys,

**MILLER COHEN, P.L.C.**, and hereby demands a trial by jury, for all issues so

triable.

23

Respectfully submitted,

**MILLER COHEN PLC**

/s/*Ryan Paree*
Keith Flynn (P74192)
Ryan A. Paree (P80345)
*Attorneys for Plaintiff*
7700 Second Ave, Suite 335
Detroit, Michigan 48202
(313) 964-4454
kflynn@millercohen.com
rparee@millercohen.com

Dated: June 28, 2023